UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE METAWAVE COMMUNICATIONS CORP. SECURITIES LITIGATION<br><br>This Document Relates to<br><br>ALL ACTIONS | CASE NO. C02-625RSM<br><br>ORDER DENYING DEFENDANT LIANG'S MOTION TO DISMISS |

This matter is now before the Court on the motion of Defendant Liang to dismiss Plaintiffs' Third Amended Complaint (Dkt. # 87)[1], a class action complaint alleging securities fraud. Senior United States District Court Judge Thomas Zilly previously granted a motion to dismiss brought by Defendant, and granted Plaintiffs leave to amend to meet the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Dkt. # 64 ("Order"); published as *In re Metawave Communications Corp. Securities Litigation*, 298 F. Supp. 2d 1056 (W.D.Wash. 2003). Plaintiffs filed an amended complaint, which was again dismissed by Judge Zilly with leave to amend. Following a second amendment and the filing of renewed motions to dismiss, the case was transferred to the undersigned district judge.

On November 8, 2004, the Court heard oral argument on the then-pending motions to dismiss.

---

[1] The motion that is on the docket is a motion to dismiss the Second Amended Complaint. It was designated by the Court as a motion to dismiss the Third Amended complaint after the complaint was amended and supplemental briefing was filed.

ORDER ON MOTION TO DISMISS - 1

On February 14, 2005, before the Court finalized its written opinion on the pending motions, plaintiffs requested a deferral until the Ninth Circuit Court of Appeals issued a final opinion in *In re Daou Systems, Inc., Securities Litigation,* 411 F. 3d 1006 (9th Cir. 2005). The Supreme Court denied certiorari in *Daou Systems, Inc.*, on February 2, 2006. 546 U.S. 1172 (2006). In the meantime, a different Supreme Court decision led plaintiffs to move for leave to amend to conform their complaint to the "loss causation" standards articulated therein. *Dura Pharmaceuticals, Inc., v. Broudo,* 544 U.S. 336 (2005). Plaintiffs' motion was granted, the Third Amended Complaint was filed, and the court set a briefing schedule for supplemental briefing on the renewed motion to dismiss, now directed to the Third Amended Complaint ("TAC"). Dkt. ## 113, 120.

Plaintiffs filed this action pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5.[2] Defendant has moved to dismiss the Third Amended Complaint ("TAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), contending that it fails to cure the pleading deficiencies previously identified by Judge Zilly. Having fully considered the arguments and the memoranda of the parties, together with the Court's previous Order, the Court now DENIES Defendant Liang's motion to dismiss.

## BACKGROUND

The background of this dispute was thoroughly set forth in Judge Zilly's Order, and will only be briefly summarized here. Defendant Metawave[3] manufactures "smart" antenna systems, used in the cellular telephone industry. The product at issue here is the Spotlight GSM Smart Antenna ("Spotlight GSM"), which uses Global System Mobile Communication technology, the standard in Europe and Asia. Metawave focused its marketing effort for the Spotlight GSM on Asian markets, particularly China. This complaint, like the ones preceding it, alleges that Metawave and the individual defendants made material misrepresentations in three areas: (1) the quality of Metawave's Spotlight GSM and demand for it in

---

[2]Plaintiffs originally asserted a claim of controlling person liability under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a). This was dismissed with prejudice as to Defendant Liang in the prior Order. Dkt. # 64, p. 52.

[3]This action has been stayed as to Defendant Metawave due to the corporation's bankruptcy.

ORDER ON MOTION TO DISMISS - 2

China, (2) revenue recognition from Spotlight GSM sales, and (3) inventory accounting. Thus, according to the TAC,

> [o]n April 24, 2001, the first day of the Class Period, Metawave issued a press release falsely announcing that it had earned about $1.6 million in revenue from its GSM product and an "increase in demand" for the products in Asia. For the next 11 months, defendants continued to litter the market with false statements concerning (i) the revenue and earnings attributed to purported GSM sales, (ii) the quality, performance and demand for GSM in Asia, (iii) the results of GSM field trials in China and (iv) the level of Metawave's inventory.
>
> None of these representations were true. . . . At the conclusion of the Class Period, Metawave admitted that it had falsely booked a total of $7.1 million in GSM revenues during 2001, all of which was eliminated when Metawave restated its financial results.
> . . . .
>
> On March 14, 2002 [the last day of the Class Period], the Company announced that due to "**insufficient customer demand** for its spotlight GSM product," the Company was shutting down the **entire GSM product line.** The Company also announced that it would (i) restate 2001 earnings due to improper recognition of revenues on sales of GSM products, and (ii) take a $23 million charge related to the discontinuation of GSM, including $18 million to write off worthless GSM inventory and fixed assets. On that news, Metawave's stock plummeted over 70%, falling below $1/share, a drop from which it never recovered.

Third Amended Complaint, ¶¶ 3-4, 7 (emphasis in original).

In the ninety-five pages following these statements, Plaintiffs set out their supporting allegations. Their assertion that Defendants violated Section 10(b) and other provisions of the Securities Acts are based on a fraud-on-the-market theory. The premise of this fraud-on-the-market theory is that "the market price of shares traded on well-developed markets reflects all publicly available information." *Basic, Inc., v. Levinson*, 485 U.S. 224, 246 (1988). Buyers and sellers of stock rely on the integrity of the market price. *Id*. Thus, the Supreme Court created a rebuttable presumption of reliance by the investors on public material statements for the purposes of a rule 10b-5 claim. *Id*. at 247-48. Plaintiffs here contend that false and misleading statements in SEC filing, press releases, and conversations with analysts resulted in artificially inflated prices for Metawave's stock, to the detriment of the Plaintiff investors.

## LEGAL STANDARDS

Defendant Liang contends that Plaintiffs have not pleaded a claim under Section 10(b) and Rule 10b-5 of the 1934 Exchange Act. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. They argue that this TAC

ORDER ON MOTION TO DISMISS - 3

still fails to meet the PSLRA pleading standards, and should be dismissed under Rules 9(b) and 12(b)(6).

A private action under § 10(b) and Rule 10b-5 must allege and prove all of the elements for primary liability for each defendant. The elements of a securities fraud claim are: (1) to use or employ any manipulative or deceptive device or contrivance; (2) scienter, i.e., wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in fraud-on-the-market cases as "transaction causation"; (5) economic loss; and (6) loss causation, i.e., a causal connection between the manipulative or deceptive device or contrivance and the loss. See *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

A Rule 10b-5 claim does not receive the traditional deference a court affords a complaint in resolving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). A complaint alleging a Rule 10b-5 violation is subject not only to the heightened pleading requirements of Fed.R.Civ.P. 9(b), but also the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *Daou*, 411 F.3d at 1014. Under Rule 9(b), the duty to plead with particularity applies only to "the circumstances constituting fraud or mistake," whereas general allegations will suffice to establish "[m]alice, intent, knowledge, and other condition of mind of a person . . . " Under the PSLRA, however, a plaintiff must "state with particularity facts giving rise to a **strong inference** that the defendant acted with the required state of mind," and must do so for "each act or omission alleged to violate" Rule 10b-5. 15 U.S.C. § 78u-4(b)(2) (emphasis added).

To satisfy the PSLRA in the context of a Rule 10b-5 allegation, a plaintiff must plead with particularity facts that create a "strong inference of, at a minimum, deliberate recklessness." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir.1999) (internal quotation omitted). That is, Plaintiffs must provide facts which show that Defendant knew the challenged statements were false at the time they were made. *Id*. at 985.

Under Rule 10b-5, the required state of mind is "scienter," which the Supreme Court has defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Id*. at 975 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n. 12 (1976)). In holding that scienter requires at least "deliberate recklessness," the Ninth Circuit has expressly rejected the notion that pleading "simple recklessness"

ORDER ON MOTION TO DISMISS - 4

suffices. *Id*. at 977. Instead, a plaintiff seeking to overcome the PSLRA's pleading hurdle must allege "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Id*. at 979. Thus, recklessness only satisfies the scienter requirement under § 10)(b) "to the extent that it reflects some degree of intentional or conscious misconduct." *Id*. at 977. If attempting to plead scienter through circumstantial evidence, Plaintiffs must "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Id*. at 974.

Finally, when determining if a complaint gives rise to a "strong inference" of scienter, the PSLRA requires a court to consider "all reasonable inferences to be drawn from the [plaintiffs'] allegations, including inferences unfavorable to the plaintiffs." *Gompper v. Visx*, Inc., 298 F.3d 893, 897 (9th Cir.2002) (emphasis in original). For a plaintiff pleading scienter, the PSLRA is the death knell for the "customary latitude" a court affords a complaint in considering a motion to dismiss under Rule 12(b)(6). *Id*. at 896 (noting that customary standard requires court to "accept plaintiff's allegations as true and construe them in the light most favorable to the plaintiff"); see also *Daou*, 411 F.3d at 1022 (reiterating *Gompper* ).

Where, as here, scienter and falsity are being inferred from the same set of facts, "these two requirements may be combined into a unitary inquiry under the PSLRA." *Ronconi v. Larkin*, 253 F. 3d 423, 429 (9th Cir. 2001). The effect is to incorporate the dual pleading requirements of 15 U.S.C. §§ 78u-4(b)(1) and (b)(2) into a single inquiry. *Id*. Where the pleadings are not sufficiently particularized, or where they do not raise a "strong inference" that misleading statements were knowingly or with deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6). *Id*. at 429.

## DISCUSSION

The Court has granted the motion to dismiss filed by two other Defendants, finding that the allegations set forth in the TAC did not cure the defects identified previously by Judge Zilly. Dkt. # 135. Specifically, the court found that the allegations in the TAC are inadequate to establish a strong inference of deliberate recklessness as to Defendants Fuhlendorf and Hunsberrger. *Id*., p. 18. However, as to Defendant Liang, the Court reaches a different conclusion.

ORDER ON MOTION TO DISMISS - 5

Under the standards articulated above, the Court finds that the allegations regarding Defendant Liang, particularly those set forth in ¶¶ 57-66, 94-100, 105, 123-135, and 158, meet the pleading standards under the PSLRA for establishing scienter. Without repeating the allegations in detail, the Court finds that these paragraphs adequately allege Defendant Liang's knowledge and actions regarding the failures of the Spotlight GSM system tests, his falsification of test results, his control over other Metawave employees, his leadership role in marketing in China, his signature on side letters that created consignment sales, his direction of shipments which included defective equipment, and his misleading statements to other Metawave employees, as well to the public as in the January 8, 2002 public statement. These allegations give rise to a strong inference that Defendant Liang was the source of the information (or misinformation) regarding sales and performance of the GSM system that was presented to the public. And in contrast to the previously dismissed Consolidated Class Acton Complaint (Dkt # 28), the TAC in these and other paragraphs (¶¶ 23-42) adequately sets forth the factual basis of each confidential witness's knowledge, including the time and circumstances in which each action or statement by Defendant Liang occurred.

As noted above, to satisfy the PSLRA in the context of a Rule 10b-5 allegation, a plaintiff must plead, with particularity, the facts that create a "strong inference of, at a minimum, deliberate recklessness." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir.1999). That is, Plaintiffs must provide facts which show that Defendant knew that the challenged statements were false at the time they were made. *Id*. at 985. The paragraphs cited above, together with others scattered throughout the TAC, cure the defects identified by Judge Zilly at page 48 of the prior Order, and satisfy the pleading requirements of the PSLRA for scienter.

Accordingly, Defendant's Liang's Rule 12(b)(6) motion to dismiss (Dkt. # 87) is DENIED.

Dated this 27th day of March, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO DISMISS - 6